422 A.2d 556

Charles MITCHELL, Appellant,

v.

PHILADELPHIA ELECTRIC COMPANY.

SEPTA, Participating Party.

Superior Court of Pennsylvania.

Argued March 17, 1980.

Filed Oct. 10, 1980.

Herbert Braker, Philadelphia, for appellant.

Charles W. Craven, Philadelphia, for appellee.

Norman Hegge, Jr., Philadelphia, for participating party.

Before HESTER, WICKERSHAM and LIPEZ, JJ.

WICKERSHAM, Judge:

On June 23, 1977, Charles H. Mitchell, appellant herein, was injured while a passenger in a truck owned by his employer, Philadelphia Electric Company. The accident occurred when an uninsured motor vehicle, owned by Hyton Industrial Scrap, Inc., struck the Philadelphia Electric Company truck. The electric company was self–insured.

At the time of the accident the law of Pennsylvania, with regard to uninsured motorists, provided that:

(a) No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death as are fixed from time to time by the General Assembly in section 1421 of article XIV of "The Vehicle Code," act of April 29, 1959 (P.L. 58), under provisions approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, Provided, that:

(1) An owner or operator of (i) any motor vehicle designed for carrying freight or merchandise or, (ii) any motor vehicle operated for the carriage of passengers for hire or compensation, having in either instance been granted a certificate of public convenience or a permit by the Pennsylvania Public Utility Commission or been issued

a certificate of public convenience and necessity or a permit by the Interstate Commerce Commission, and

(2) An owner or operator of any other motor vehicle designed for carrying freight or merchandise or operated for the carriage of passengers for hire whose employes are insured under the provisions of "The Pennsylvania Workmen's Compensation Act," act of June 2, 1915 (P.L. 736), as amended, shall have the right to reject such coverage in writing in which event, such coverage need not be provided in or supplemental to a renewal policy where such insured had rejected the coverage in connection with a policy previously issued to him by the same insurer. 1963, Aug. 14, P.L. 909, § 1 as amended 1968, Dec. 19, P.L. 1254, No. 397, § 1, effective Jan. 1, 1969, 40 P.S. § 2000 (footnotes omitted).

Mitchell brought the instant suit in Equity against his self–insured employer to recover the equivalent of uninsured motorist insurance coverage benefits.

In his complaint he alleged the above facts and in addition that appellee was not an owner or operator of motor vehicles designed for carrying freight, merchandise, or passengers for hire or compensation. Appellant's complaint stated that appellee carried an "excess liability" insurance policy with California Union Insurance Company which covered the truck involved in the accident and that this policy contained the following provision:

"[t]he insured [appellee, Philadelphia Electric Company] warrants that coverage under the uninsured motorist laws will be maintained during the policy period." Appellant asserted further that appellee, as a qualified self–insurer, must discharge all duties and responsibilities of an insurance carrier under the Uninsured Motorist Act, Act of August 14, 1963, P.L. 909, § 1, *as amended*, 40 P.S. § 2000, and that appellee breached the warranty provision of the "excess liability" policy by failing to carry uninsured motorist coverage.

Appellee filed preliminary objections in the nature of a demurrer. The Court of Common Pleas of Philadelphia

County sustained the preliminary objections and dismissed appellant's complaint on the grounds that there was no legal basis to impose a duty upon appellee to furnish uninsured motorist coverage to appellant. The lower court based its decision on the following legal analysis: 1) an injured employee's exclusive remedy against his employer is under The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1 *et seq.*, citing *Turner v. Southeastern Pa. Transp. Auth.*, 256 Pa.Super. 43, 389 A.2d 591 (1978); and 2) the Uninsured Motorist Act only applies to liability policies of insurance, none of which exist here, citing *Johnson v. Yellow Cab Company of Philadelphia*, 456 Pa. 256, 317 A.2d 245 (1974) and *Tournier v. Home Indemnity Insurance Company*, 57 D. & C.2d 687 *aff'd per curiam*, 222 Pa.Super. 710, 291 A.2d 877 (1972). The lower court's decision is now before us on appeal.

## I.

The standard for reviewing an order sustaining preliminary objections is set forth in *Gekas v. Shapp*, 469 Pa. 1, 364 A.2d 691 (1976) as follows:

> The standards for sustaining preliminary objections in the nature of a demurrer are quite strict. A demurrer admits every well–pleaded material fact set forth in the pleadings to which it is addressed as well as all inferences reasonably deducible therefrom, but not conclusions of law. *Buchanan v. Brentwood Federal Savings and Loan Association*, 457 Pa. 135, 320 A.2d 117 (1974); *Borden v. Baldwin*, 444 Pa. 577, 281 A.2d 892 (1971); *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970). In order to sustain the demurrer, it is essential that the plaintiff's complaint indicate on its face that his claim cannot be sustained, and the law will not permit recovery. *Hoffman v. Misericordia Hospital of Philadelphia*, 439 Pa. 501, 267 A.2d 867 (1970); *Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 259 A.2d 443 (1969); *Papieves v. Lawrence, supra.* If there is any doubt, this should be resolved in

favor of overruling the demurrer. *Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A.2d 623 (1970).

*Id.,* 469 Pa. at 5–6, 364 A.2d at 693.

On appeal, appellant argues that appellee has the statutory duty to provide uninsured motorist coverage for appellant under the Uninsured Motorist Act because the motor vehicle involved in the accident does not fall into any of the exceptions listed under the Act. The Uninsured Motorist Act provides that all motor vehicle liability policies of insurance issued with respect to any motor vehicle registered or principally garaged within the Commonwealth of Pennsylvania must compensate the insured for his physical injuries which are caused by the conduct of an owner or operator of an uninsured motor vehicle. The Act requires that the conduct of the owner or operator of the uninsured motor vehicle be the legal cause of the insured's physical injuries which may include bodily injury, sickness, disease and death. The Act specifically excludes motor vehicles designed for carrying freight or merchandise or operated for the carriage of passengers for hire or compensation, where the owner or operator of these vehicles has rejected such coverage in writing and one of the following situations exist: 1) the owner or operator has been granted a certificate of public convenience or a permit by the Pennsylvania Public Utility Commission; 2) the owner or operator has been issued a certificate of public convenience and necessity or a permit by the Interstate Commerce Commission; or, 3) the employees of the owner or operator are insured under The Pennsylvania Workmen's Compensation Act. *State Farm Mut. Auto. Ins. v. Williams,* 481 Pa. 130, 138–139, 392 A.2d 281, 286 (1978).

Appellee does not dispute that the motor vehicle in the instant matter is not designed for carrying freight or passengers for hire and does not fall into any of the exceptions, as set forth above, of the Uninsured Motorist Act. Appellee makes the argument relied upon by the court below that the Act does not apply to them because no liability policy of insurance exists with respect to that motor vehicle. Appel-

lee cites *Johnson v. Yellow Cab Company of Philadelphia*, 456 Pa. 256, 317 A.2d 245 (1974), in which passengers of a taxicab were victims of a motor vehicle accident caused by the negligent conduct of an uninsured motorist. The taxicab was owned by Yellow Cab Company of Philadelphia (hereinafter Yellow Cab) who was a self–insurer.

The passengers of the taxicab filed a complaint against Yellow Cab asserting a statutory cause of action under the Uninsured Motorist Act. The lower court sustained Yellow Cab's demurrer to the complaint and an appeal followed to the Pennsylvania Supreme Court. Upon reargument, the supreme court affirmed the lower court's decision stating:

> The appellants [the passengers of the taxicab] have alleged that the appellee [Yellow Cab] is self–insured but they have not alleged the existence of any *liability policy of insurance.* This precludes any cause of action under the Uninsured Motorist Liability Act since that Act applies *only* when a *liability policy of insurance is delivered or issued for delivery.* If no *liability policy of insurance* exists, that Act, does not apply. One who is self–insured does not have a *liability policy of insurance.* Such a policy is a *contract* involving at least two parties–an *insurer* and an *insured.* The allegation that the appellee is self–insured negates any possible inference that a *liability policy of insurance* exists.

*Id.,* 456 Pa. at 259, 317 A.2d at 247.

■■■ We find the *Johnson* case to be controlling here. Since appellant alleges in his complaint that appellee is a qualified self–insurer, appellee has no liability policy of insurance covering its motor vehicles and therefore has no statutory obligation to provide uninsured motorist coverage for appellant. Contrary to appellant's viewpoint, the Uninsured Motorist Act does not apply to *any owner* of a motor vehicle registered or garaged within the Commonwealth, but rather the Act applies to *any motor vehicle liability policy of insurance* issued with respect to any motor vehicle registered or garaged within the Commonwealth with certain exceptions. Clearly the key words of the Act are "liability policy of insurance."

Appellant argues that the *Johnson* case is not controlling here because the supreme court's decision rested upon the fact that Yellow Cab was the owner of a motor vehicle designed for the carriage of passengers for hire and, as such, included in the listed exceptions to the Act, as well as upon the fact that no liability policy of insurance existed. We disagree. The supreme court's reference to the type of motor vehicle in the *Johnson* case was made in a discussion as to what persons may reject uninsured motorist coverage under the Act. Since the supreme court determined that Yellow Cab did not reject such coverage because such coverage had never been offered to Yellow Cab, the court's discussion as to the type of motor vehicle involved in that case was dicta and had no bearing on its holding that the Uninsured Motorist Act did not apply to Yellow Cab.

In conclusion, if there is no liability policy of insurance, the Act is inapplicable and one need not determine further whether the particular type of motor vehicle may be excluded from the Act's coverage.

## II.

■ Appellant's second argument on appeal is that appellee has a contractual duty to provide uninsured motorist coverage to appellant on the basis of the "excess liability" policy of insurance in which appellee warranted that uninsured motorist coverage would be maintained during the policy period. Appellant argues that he is a third party beneficiary of this provision and that appellee's failure to maintain uninsured motorist coverage constituted a breach of a contractual obligation which appellee owed to appellant.[1] Appellee argues in response that the insurance policy

---

1. On appeal, appellant does not assert that the "excess liability" policy constitutes a motor vehicle liability policy of insurance subject to the provisions of the Uninsured Motorist Act. The issue of whether an "excess liability" policy is a motor vehicle liability policy of insurancce under the Act arose in *Tournier v. Home Indemnity Insurance Company*, 57 D. & C.2d 687, *aff'd per curiam*, 222 Pa.Super. 710, 291 A.2d 877 (1972), in which the court held that an "excess liability" policy, similar to the one here, did not constitute a liability

does not contain the particular provision alleged in the complaint and also that a claim under the Workmen's Compensation Act is appellant's exclusive remedy against appellee. As previously quoted with regard to reviewing an order sustaining preliminary objections, "[a] demurrer admits every well–pleaded material fact set forth in the pleadings to which it is addressed as well as all inferences reasonably deducible therefrom, but not conclusions of law." *Gekas v. Shapp*, 469 Pa. 1, 5–6, 364 A.2d 691, 693 (1976). Therefore, we cannot consider appellee's contradictory assertion.

Appellee's second argument as to the exclusivity of the Workmen's Compensation Act was followed by the lower court. Appellee cites *Turner v. Southeastern Pa. Transp. Auth.*, 256 Pa.Super. 43, 389 A.2d 591 (1978). In *Turner*, a bus driver employed by Southeastern Pennsylvania Transportation Authority (hereinafter SEPTA) was injured in a collision between his bus and another vehicle. The bus driver filed a complaint seeking to recover from his employer under the Pennsylvania No–fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 *et seq.* (Supp.1980–81). The bus driver admitted that at the time of the accident he was acting within the scope of his employment. This court held that the lower court properly granted SEPTA's motion for judgment on the pleadings on the grounds that the liability of an employer under the Workmen's Compensation Act is exclusive and precludes any recovery from the employer under the No–fault Act.

■ In reaching the holding in *Turner*, this court relied on the "blanket statement" of Section 303(a) of the Workmen's Compensation Act, 77 P.S. § 481(a) (Supp.1980–81):

(a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled

policy of insurance but rather an indemnity policy of insurance to which the Act does not apply.

to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2)[1] or occupational disease as defined in section 108.[2]

*Id.*, 256 Pa.Super. at 45–46, 48, 389 A.2d at 592.

In addition, this court cited the well–established rule that the Workmen's Compensation Act is an injured employee's sole remedy against his employer. *Id.* at 45, 389 A.2d at 592 (cases cited therein). This rationale is equally applicable to the case now before us. Like the bus driver in *Turner*, appellant made sufficient allegations in his complaint from which one can reasonably infer that the injury suffered by the appellant is of the type defined in Section 301(c)(1) of the Workmen's Compensation Act, 77 P.S. § 411(1) (Supp. 1980–81).[2] Since appellant's complaint on its face indicates that he has a remedy against appellee under the Workmen's Compensation Act, appellant has no other remedy against his employer.

Appellant argues that the *Turner* case is not authority for the proposition that the Workmen's Compensation Act precludes a contract action by an employee against his employer. Appellant's primary authority for this argument is the following passage:

2. Appellant alleged in his complaint that: 1) Philadelphia Electric Company, appellee, owned the motor vehicle involved in the accident; 2) on the date of the accident appellant was an employee of appellee; 3) at the time of the accident appellant was a passenger in said motor vehicle; and, 4) as a result of the accident appellant suffered cervical and lumbo sacral spine strains and a lumbar disc protrusion, all or some of which may be permanent. Section 301(c)(1) defines "injury" as follows:

The term 'injury arising in the course of his employment,' . . . shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

77 P.S. § 411(1) (Supp.1980–81).

It is well known to even the casual student of workmen's compensation law that the exclusivity language was intended simply to bar a tort remedy under any guise against the employer; it was never intended to defeat a claim against the employer qua no–fault recovery, or for that matter any other non–tort form of recovery.

*Shrager, The Pennsylvania No–Fault Motor Vehicle Insurance Act;* paragraph 1:17.4.

As appellee accurately states, the above passage is not the law of the Commonwealth. The broad language of Section 303(a) of the Workmen's Compensation Act does not suggest in any way that the legislature intended to bar only tort remedies. If the legislature had desired to make an exception for contract actions, one would have expected them to use language similar to that in Section 303(b).[3] Under the former version of Section 303,[4] which did not state the exclusivity rule as broadly as does the current version, the Pennsylvania Supreme Court did not allow an injured em-

---

**3.** Section 303(b) provides:

In the event injury or death to an employe is caused by a third party, then such employe, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employes, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for *in a written contract* entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

77 P.S. § 481(b) (Supp.1980–81).

**4.** The former version of Section 303 provided:

Such agreement shall constitute an acceptance of all the provisions of article three of this act,[1] and shall operate as a surrender by the parties thereto of their rights to any form or amount of compensation or damages for any injury or death occurring in the course of the employment, or to any method of determination thereof, other than as provided, in article three of this act. Such agreement shall bind the employer and his personal representatives, and the employé, his or her wife or husband, widow or widower, next of kin, and other dependents.

77 P.S. § 481, *quoted in DeJesus v. Liberty Mutual Insurance Company,* 439 Pa. 180, 183–84, 268 A.2d 924, 925–926 (1970).

ployee to claim relief as a third party beneficiary of a contract between the employer and the insurance carrier. *DeJesus v. Liberty Mutual Insurance Company*, 439 Pa. 180, 268 A.2d 924 (1970).[5]

Appellant also cites *Harleysville Mutual Casualty Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968) as support for his contention that the Workmen's Compensation Act is not exclusive as to contract actions between an employer and an employee. However, since the only issue before the court was whether an employee could claim uninsured motorist coverage from his own insurance carrier and the court never reached the issue of exclusivity of the workmen's compensation remedy, appellant's reliance on *Harleysville* is misplaced.

We conclude that the language of Section 303(a) of the Workmen's Compensation Act does not except contract actions from the exclusivity rule, so that appellant is precluded from seeking relief as a third party beneficiary of appellee's "excess liability" insurance policy. Having determined that appellee is not subject to the requirements of the Uninsured Motorist Act, we need not decide whether the workmen's compensation remedy is exclusive as to any statutory duty of providing uninsured motorist coverage.[6]

We affirm the lower court's order sustaining appellee's preliminary objections on the grounds that appellee has

**5.** The issue in *DeJesus, supra*, was whether the former version of Section 303 (note 4 *supra*) as interpreted in *Brown v. Travelers Ins. Co.*, 434 Pa. 507, 254 A.2d 27 (1969), was unconstitutional under the state constitution. The Pennsylvania Supreme Court had held in *Brown* that a workmen's compensation carrier is included within the term "employer" as used in Section 303. In *DeJesus*, the court determined that such an interpretation was not unconstitutional, and having reached this conclusion, the court affirmed the summary judgment in favor of the employer's insurance carrier.

**6.** The decision in *Turner v. Southeastern Pa. Transp. Auth.*, 256 Pa.Super. 43, 389 A.2d 591 (1978) is strong support for the proposition that Section 303(a) of the Workmen's Compensation Act does preclude an injured employee's claim against his employer under the Uninsured Motorist Act.

neither a statutory nor contractual duty to provide uninsured motorist coverage to appellant.