691 A.2d 459

**Lorren R. GARDNER, Appellant,**

v.

**ERIE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1996.

Filed Feb. 5, 1997.

Reargument Denied April 14, 1997.

Vincent J. Barbera, Somerset, for appellant.

James B. Courtney, Somerset, for appellee.

Before HUDOCK, FORD ELLIOTT, and HESTER, JJ.

FORD ELLIOTT, Judge:

In this appeal, we are asked to decide whether the trial court erred when it granted appellee Erie Insurance Company's motion for judgment on the pleadings. Finding error, we reverse.

The facts, about which there is no disagreement, can be briefly stated. On October 23, 1994, appellant Lorren Gardner (Gardner) was injured when the car he was driving was hit by a phantom vehicle. Gardner was driving a 1990 Geo Metro owned by Gardner's co-employee Steven J. Ward (Ward), a passenger in the Geo at the time of the accident. Ward insured the Geo with appellee Erie Insurance Company (Erie) under a policy that provided for uninsured motorist benefits. Gardner and Ward were acting within the scope of their employment at the time of the accident in question.[1] (R.R. at 43–44.)

Gardner recovered uninsured motorist benefits from his own insurance policy with Progressive Insurance in the amount of $15,000, and also received Workers' Compensation benefits from his employer. He then sought to recover uninsured motorist benefits under Ward's insurance policy with Erie. When Erie denied benefits, Gardner brought an action seeking declaratory relief on June 20, 1995. The parties then engaged in the taking of deposition testimony and other discovery, after which Erie filed a motion for judgment on the pleadings and summary judgment, and Gardner filed a motion

---

1. Gardner was in the process of purchasing the Geo from Ward and had already made several payments toward that end. Gardner had also obtained a policy of insurance on the Geo from Progressive Insurance Company. Ward claimed he had contacted Erie to remove the Geo from his policy of insurance; however, Erie had no record of such a request. Its records indicated, on the contrary, that the policy was not cancelled until March 27, 1995. (R.R. at 73–80.)

for summary judgment. Oral argument was held on the various motions on April 9, 1996, after which the trial court took the matter under advisement. On May 21, 1996, the trial court issued its memorandum and order granting Erie's motion for judgment on the pleadings. This order was filed May 22, 1996. Gardner then timely filed the instant appeal on June 11, 1996.

The gravamen of Gardner's issues on appeal is whether the trial court erred when it determined as a matter of law that Gardner could not seek recovery under a co-employee's policy of insurance for uninsured motorist benefits where Gardner had already received workers' compensation benefits. Or, as Erie stated the issue, "When an employee has received workers' compensation benefits for injuries sustained while operating a co-employee's motor vehicle within the scope of his employment, do the exclusivity provisions of the Workers' Compensation Act and the repeal of 75 Pa.C.S.A. § 1737 statutorily bar [Gardner] from recovering uninsured motorists benefits from his co-employee's personal policy of motor vehicle insurance?" (Erie's brief at 1.)

A motion for judgment on the pleadings is governed by Pa. R. Civ. P. 1034, which provides:

(a) After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings.

(b) The court shall enter such judgment or order as shall be proper on the pleadings.

Pa. R. Civ. P. 1034, 42 Pa.C.S.A.[2]

Our scope of review of a trial court's granting of a motion for judgment on the pleadings is plenary. An appellate court will apply the same standard applied by the trial court. A court should grant a motion for judgment on the pleadings where the pleadings demonstrate that no genuine

2. Rule 1034 was amended February 14, 1996, effective July 1, 1996. Because the instant motion was filed February 1, 1996 and decided May 21, 1996, however, the old Rule applies. The minor

issue of fact exists, and that the moving party is entitled to judgment as a matter of law.

> ... [A] trial court must confine its consideration to the pleadings true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed. The court may grant judgment on the pleadings only where the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

We will reverse a trial court's grant of judgment on the pleadings only where a clear error of law has been committed or where there were facts disclosed by the pleadings which should have been resolved by the jury.

*Fowkes v. Shoemaker*, 443 Pa.Super. 343, 346, 661 A.2d 877, 878 (1995), *allocatur denied*, 544 Pa. 609, 674 A.2d 1072 (1996), *quoting McAllister v. Millville Mutual Insurance Co.*, 433 Pa.Super. 330, 640 A.2d 1283 (1994), *allocatur denied*, 539 Pa. 653, 651 A.2d 540 (1994) (other citations omitted).

Instantly, the trial court relied on the supreme court's recent decision in *Ducjai v. Dennis*, 540 Pa. 103, 656 A.2d 102 (1995), as well as 1993 amendments to the Motor Vehicle Financial Responsibility Law (MVFRL) as support for its grant of judgment on the pleadings. In particular, the trial court relied upon the repeal or partial repeal of 75 Pa.C.S.A. §§ 1720, 1735, and 1737. The trial court also cited *General Accident Insurance Company of America v. Parker*, 445 Pa.Super. 300, 665 A.2d 502 (1995) (injured person who makes a claim for uninsured motorist benefits under an insurance policy to which he is not a signatory is in the category of a third-party beneficiary, and is thus bound by the same limitations in the insurance contract, including waiver of uninsurance benefits, as the parties to the contract), *allocatur denied*, 544 Pa. 631, 675 A.2d 1249 (1996), and *Mitchell v. Philadelphia Electric Company*, 281 Pa.Super. 452, 422 A.2d 556 (1980), to support its analysis. We will begin our analysis with *Ducjai*.

In *Ducjai*, the supreme court was confronted with the issue of "whether passage of the Motor Vehicle Financial Responsibility Law ["MVFRL"], 75 Pa.C.S. § 1701 et seq., expressed a legislative intent to alter the law regarding an employee's *tort* liability for injuries sustained by a co-employee in an accident during the course and scope of her employment." *Ducjai, supra* at 105, 656 A.2d at 102 (emphasis added). As the *Ducjai* court rephrased the issue, "More specifically, may an employee recover both workers' compensation benefits from her employer as well as *damages at common law* from her co-employee under the MVFRL, when injured in an automobile accident during the course and scope of his [sic] employment?" *Id.* at 105, 656 A.2d at 102–03 (emphasis added). A brief review of the facts of *Ducjai* follows.

Appellant Juleann Ducjai was injured while a passenger in an automobile driven by her co-employee Dawn Dennis when both were acting within the scope of their employment with the Y.M.C.A. After receiving workers' compensation benefits, Ducjai filed a complaint in trespass, alleging that she was injured as a result of the negligence of both Dennis and the driver of the other car, Peter Tarvin. Dennis filed a motion for summary judgment in which she claimed immunity from liability in negligence based upon her status as Ducjai's co-employee, where both were acting within the scope of their employment at the time of the accident. *Id.* at 105–07, 656 A.2d at 103. After some delay not relevant to this case, the motion was granted. Ducjai appealed to this court which, by memorandum, initially reversed and remanded for further proceedings. *Ducjai v. Dennis*, No. 2042 Philadelphia 1992 (filed February 3, 1993) (Cirillo and Hoffman, JJ.; McEwen, J., dissenting). Reargument was granted, however, and an *en banc* panel of the court affirmed the entry of summary judgment. *Ducjai v. Dennis*, 431 Pa.Super. 366, 636 A.2d 1130 (1994) (Cirillo, J., concurring). On grant of allocatur, the supreme court likewise affirmed.

In affirming, the supreme court relied upon two prior cases in which it either discussed the exclusivity provision of the

Workers' Compensation Act, 77 P.S. § 481,[3] *Alston v. St. Paul Ins. Cos.*, 531 Pa. 261, 612 A.2d 421 (1992), or discussed the interplay between the MVFRL and the Act. *Hackenberg v. SEPTA*, 526 Pa. 358, 586 A.2d 879 (1991). Addressing the exclusivity issue first, the *Ducjai* court quoted the following language from *Alston, supra:*

"[T]he exclusivity clause of the Workmen's[4] Compensation Act, 77 P.S. § 481, reflects the historical quid pro quo between an employer and employee whereby the employer assumes liability without fault for a work-related injury, but is relieved of the possibility of a larger damages verdict in a common law action. The employee benefits from the expeditious payment of compensation but forgoes recovery of some elements of damages.... '[T]he comprehensive system of substantive, procedural, and remedial laws comprising the workmen's compensation system should be the exclusive forum for redress of injuries in any way related to the work place.' "

*Ducjai, supra* at 109, 656 A.2d at 104–05, *quoting Alston, supra* at 267, 612 A.2d at 424 (other citations omitted).

3. Section 481 provides:

> **§ 481. Exclusiveness of remedy; actions by and against third party; contract indemnifying third party**
>
> (a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his [sic] legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise *on account of any injury or death* as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.
>
> (b) In the event injury or death to an employe is caused by a third party, then such employe, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their *action at law* against such third party, but the employer, his insurance carrier, their servants and agents, employes, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

4. The name of the Act was changed in 1993 to *Workers'* Compensation Act.

Next, the *Ducjai* court reviewed its analysis of the interplay between the Workers' Compensation Act ("the Act") and the MVFRL in *Hackenberg, supra.* As the *Ducjai* court observed, the *Hackenberg* court determined that the legislature had not manifested an intention to supersede the Act's exclusivity provision with the provision then existing in the MVFRL that self-insured entities provide uninsured motorist benefits; as a result, self-insured employers were not required to pay uninsured motorist benefits to employees injured in automobile accidents occurring within the scope of their employment and involving uninsured drivers. *Ducjai, supra* at 109–10, 656 A.2d at 105, *citing* 75 Pa.C.S.A. § 1787; 77 P.S. § 481(a); *Hackenberg, supra* at 369–70, 586 A.2d at 885.

The *Ducjai* court then applied its analyses in *Alston, supra,* and *Hackenberg, supra,* to its prior holding in *Apple v. Reichert,* 443 Pa. 289, 278 A.2d 482 (1971), in which it had held that Section 72 of the Act[5] "'clearly provides that a co-employee is immune from liability for his negligent act resulting in injury to his fellow employee.'" *Ducjai, supra* at 108, 656 A.2d at 104, *quoting Apple, supra* at 292, 278 A.2d at 483. Reading *Apple* in conjunction with *Alston* and *Hackenberg,* the *Ducjai* court "readily conclude[d] that Ducjai was precluded from recovering damages at common law for the alleged negligence of Dennis." *Ducjai, supra* at 110, 656 A.2d at 105. As a result, the *Ducjai* court held that "an employee may not recover both workers' compensation benefits from her employer as well as damages at common law from her co-employee under the MVFRL, when injured in an automobile accident during the course and scope of her employment." *Id.* at 113, 656 A.2d at 107.

What emerges from a careful analysis of *Ducjai* when read in conjunction with *Apple, supra,* and with § 72 of the

5. Section 72 provides:

**§ 72. Liability of fellow employe**

If disability or death is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability or death for any act or omission occurring while such person was in the same employ as the person disabled or killed, except for intentional wrong.

Act is the inescapable, and uncontested, conclusion that a co-employee who is injured in the course of employment cannot hold another co-employee *liable for injuries occasioned by his or her "act or omission" (negligence);* rather, such co-employee can only be held liable for injuries resulting from intentional acts. As noted, Gardner does not challenge this conclusion, arguing instead that the instant case involves Gardner's claim against a negligent third-party tortfeasor. Thus, according to Gardner, this case should be analyzed as if Gardner were seeking benefits from a third-party tortfeasor's liability insurance. We agree.

■ First, we note that Gardner is not seeking benefits under Ward's liability insurance coverage, as was the situation in *Ducjai.* Rather, Gardner is, in fact, seeking the same benefits Ward would be seeking if he, instead of Gardner, had been injured in the accident. The instant case clearly has nothing to do with the negligent acts or omissions of a co-employee; as a result, Section 72 is inapplicable.

A comparison of the wording of § 481(a) with the wording of § 72 gives further support for our conclusion that § 72 should not be read to apply to this case. Section 481(a), addressing the liability of an employer, is a broadly worded exclusionary provision, proclaiming the Act as the exclusive remedy against an employer, and precluding anyone with any connection to an injured employee's claim from seeking damages "in any action at law or otherwise." Section 72, on the other hand, which addresses the liability of a fellow employee, merely precludes liability *for any act or omission* occurring while the person was in the same employ as the injured person, in situations in which the Act applies. Reflecting on the legislative intent behind § 72, the supreme court observed in *Apple, supra:*

> While we can speculate that the legislature was more interested in fellow employe immunity for on-premises accidents due to negligence where the negligent employe is not likely to have liability insurance coverage, and we are aware that the employe's automobile carrier here benefits rather than the employer's compensation carrier, nevertheless we are not free to rephrase clear language of a statute in aid of a

plaintiff even in circumstances like those in this case where this might open an avenue to a more equitable result.

We read the amending Act as clearly phrased to protect all co-employes *in all situations where negligent conduct of one employe may cause injury to a fellow employe, provided only that the injury in question is one that is compensable under the act.*

*Apple, supra* at 294, 278 A.2d at 485 (emphasis added), *quoted with approval in Ducjai v. Dennis,* 431 Pa.Super. 366, 374–75, 636 A.2d 1130, 1134–35 (1994). Based upon the foregoing, it seems unlikely that the *Apple* court would have extended § 72 to apply to the facts instantly.

■ Next, we note that § 481(a), set forth *supra,* is also inapplicable to the instant case because it addresses the exclusivity of the liability *of an employer* under the Act. Gardner has not attempted to hold his employer liable for his injuries, nor has Gardner sought a remedy from his employer's insurance carrier for any uninsurance motorist benefits his employer's insurance may provide. Thus, we find inapposite those cases cited by Erie in which uninsured motorist benefits, provided either through a policy of insurance purchased by the employer or by a self-insured employer, were held to be unavailable to an employee who was injured in the scope of employment and who received workers' compensation benefits. *See Hackenberg, supra; Electric Insurance Co. v. Wilkins,* 85 F.3d 611 (3d Cir.1996) (unpublished opinion, no. 95–1580).

Additionally, we question the continuing validity of *Wilkins* in view of this court's recent decision in *Warner v. Continental/CNA Insurance Companies,* 455 Pa.Super. 295, 688 A.2d 177 (1996). In *Warner,* a panel of this court held that, under the 1993 amendments to the MVFRL and the Act, an employee injured within the scope of his employment may seek underinsured motorist benefits from his employer's liability insurer, in addition to any workers' compensation benefits and tortfeasor liability insurance benefits to which he may be entitled. The basis for the *Warner* court's holding was the amendment to § 1720 of the MVFRL which permits the

workers' compensation carrier to seek subrogation against a claimant's tort recovery where the workers' compensation carrier has paid benefits to the claimant. *Id.* at ————, 688 A.2d at 183 *citing Schroeder v. Schrader*, 453 Pa.Super. 59, 63–65, 682 A.2d 1305, 1307 (1996). While *Warner* addresses an employee's claim for underinsurance rather than uninsurance, we do not find this distinction meaningful; thus, even if Gardner were seeking uninsurance benefits from his employer under § 481(a), he could recover under the *Warner* court's analysis.

Because § 481(a) is not applicable to the instant case, however, Erie's and the trial court's reliance on *Mitchell v. Philadelphia Electric Co.*, 281 Pa.Super. 452, 422 A.2d 556 (1980), is likewise misplaced. In *Mitchell*, a panel of this court held that § 481(a) precluded an employee from bringing an action on the contract seeking relief as a third-party beneficiary of his employer's excess liability policy, in which the employer warranted that uninsured motorist coverage would be maintained. The *Mitchell* court found that nothing in the broad language of § 481(a) indicated a legislative intent to bar only tort remedies. *Id.* at 461, 422 A.2d at 561. As already noted, however, § 481(a) is not relevant to the instant case, and the language of that section is far broader than the language of the section applicable to actions against co-employees. Clearly, even if § 72 were found to be applicable instantly, we could not read a prohibition against actions on the contract into the restrictive language of that section.

■ The section of the Act relevant to the instant case is § 481(b), also set forth *supra.* That section *permits* an employee to bring an action at law against a third-party tortfeasor who causes either death or injury to an employee, while at the same time protecting the employer from actions for damages, indemnity, or contribution by the third party. An uninsured benefits claim is, in essence, a claim for damages caused by an unknown or uninsured third party, as is the case instantly. Gardner is not claiming that Ward was negligent, nor could he; Ward was a passenger. If both Ward and Gardner had been injured, they both could have sought unin-

surance benefits, just as they both could have brought claims against a known third-party tortfeasor. *See Parker, supra* at 304–05, 665 A.2d at 504 (where driver of automobile is not a named insured, he is a third-party beneficiary, subject to the same limitations [and, by the same analysis, the same benefits] in the policy as the parties to the insurance contract). To equate a claim for uninsurance benefits with an action in tort based on negligence is to equate apples with oranges.

■ We turn next to the sections of the MVFRL cited by Erie and the trial court. Unlike Erie and the trial court, however, we do not find that the 1993 repeal or partial repeal of §§ 1735, 1737, and 1720, respectively, of the MVFRL indicates a legislative intent to deprive Gardner of the uninsured motorist benefits provided in Ward's policy, any more than these changes in the statute indicate an intent to deprive an employee of underinsurance benefits provided in his employer's policy, *Warner, supra,* or to to deprive Gardner of the uninsured motorist benefits provided in his own policy. As the *Warner* court notes, § 1735 provided that coverages required by Subchapter C, relating to uninsured and underinsured motorist coverage, were to be unaffected by workers' compensation benefits. *Warner,* at –––– ––––, 688 A.2d at 183–84. Section 1737 provided that workers' compensation benefits were not a bar to the recovery of uninsured or underinsured motorist benefits *from an employer's* motor vehicle policy under the MVFRL. Additionally, as already noted, § 1720, which provides that there is no right of subrogation or reimbursement from a claimant's tort recovery in certain instances, was repealed insofar as it related to workers' compensation payments or other benefits under the Workers' Compensation Act. As a result, there now exists a right of subrogation from a claimant's tort recovery with respect to workers' compensation benefits. *Schroeder, supra* at 63–65, 682 A.2d at 1307.

■ A fair reading of these amendments to the MVFRL thus indicates a legislative intent to preclude double recovery of both workers' compensation benefits and damages in tort

by allowing for subrogation, as where an injured driver recovers from a third-party tortfeasor and also receives workers' compensation benefits. *See Palmosina v. Laidlaw Transit Co., Inc.*, 445 Pa.Super. 121, 664 A.2d 1038 (1995) (MVFRL as it appeared in 1989 permitted a pedestrian employee to effect a double recovery from a third-party tortfeasor who struck pedestrian with a bus, even though pedestrian had previously been paid benefits by her employer's workers' compensation carrier). The revisions also indicate a legislative intent to disallow a double recovery from the injured employee's employer, first, in the guise of workers' compensation benefits, and then in the guise of uninsurance or underinsurance benefits for the provision of which the employer has either insured itself or purchased a policy of insurance. *Warner*, at ——, 688 A.2d at 183–84.

■ The only relevance of these amendments to the MVFRL to the situation instantly, however, is, as noted *supra*, that if Gardner recovers uninsurance benefits under Ward's policy, his employer's workers' compensation carrier will have a right of subrogation for workers' compensation benefits it paid. *Warner, supra; Schroeder, supra.* Gardner agrees. (Gardner's brief at 10–11.) Additionally, the goal of the Legislature in repealing §§ 1735 and 1737 is not in any way thwarted by allowing Gardner to pursue uninsurance benefits under Ward's policy; Gardner's *employer*, the *quid* in the *quid pro quo* of the Act, is still immune from all *liability* to its employees except for that expressly provided for by the Act. *See Ducjai, supra* at 107–11, 656 A.2d at 104–05; *Alston, supra* at 267, 612 A.2d at 424; *Hackenberg, supra* at 368–69, 586 A.2d at 884.

Because nothing in the Act or the revisions to the MVFRL precludes Gardner from claiming uninsured motorist benefits under Ward's policy of insurance with Erie, we vacate the order of the trial court granting Erie's motion for judgment on the pleadings, and remand for proceedings consistent with this

opinion.[6]

Jurisdiction is relinquished.

HUDOCK, J., files a concurring statement.

HUDOCK, Judge, concurring.

As the Majority notes, *Warner v. Continental/CNA Insurance Companies, supra,* holds that an employee injured within the scope of his employment may recover underinsured motorists' benefits under his employer's insurance policy in addition to any workers' compensation benefits to which he may be entitled. I join the Majority opinion because (1) I am bound by the *Warner* decision, and (2) I see no reason why the result in the instant case should be different simply because the instant case involves uninsured motorists' benefits whereas *Warner* involved underinsured benefits or because the present case involves a co-employee rather than an employer, as was the situation in *Warner.*

Part of the rationale for the *Warner* decision was that one of the purposes of the Workers' Compensation Act is furthered by allowing the injured employee to recover underinsured or uninsured motorists' benefits against his or her employer's motor vehicle insurer because a fund is thereby created against which the employer's workers' compensation carrier can exert its subrogation lien. Unanswered by our decision today is the question of whether the added benefits which we allow Appellant to recover will ultimately benefit Appellant or the workers' compensation carrier.

---

**6.** We note that the trial court did not address either party's motion for summary judgment, having entered judgment on the pleadings.